UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re )<br>)<br>MEXCALITO TACO-BAR, INC., )<br>)<br>Debtor )<br>_____ )<br>)<br>MEXCALITO TACO-BAR, INC., )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>AMSTERDAM CAPITAL GROUP, INC., )<br>)<br>Defendant )<br>_____ ) | Chapter 11<br>Case No. 24-30170-EDK<br><br><br><br><br><br><br><br>Adv. Pro. No. 24-03006 |

**MEMORANDUM OF LAW OF AMSTERDAM CAPITAL GROUP, INC.
IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

The First Circuit has made it clear that it is an extraordinary exercise of discretion for a Bankruptcy Court to enjoin a lawsuit against the principals of a Debtor. Because the Debtor has not offered any evidence to justify this extraordinary relief, the Motion should be denied.

**BACKGROUND**

Knowing that their business was on the brink of bankruptcy, but not disclosing that fact to Amsterdam Capital Group, Inc. ("ACG"), Antonio Marquez Diaz and Jennifer Lee Albury, the two owners of Mexcalito Taco-Bar, Inc. (the "Debtor"),[1] applied for and obtained two cash advances from ACG totaling $35,000 in exchange for the sale to ACG of $51,485 of the Debtor's Future Receipts, being "payments, receipts, settlements and funds paid to or received by or for the

---
[1] According to the statement of financial affairs, Mr. Diaz owns 51 percent of the Debtor and Ms. Albury owns 49 percent.

account of [the Debtor] … in payment or settlement of [the Debtor's] existing and future accounts, payments intangibles, credit, debit and/or stored value card transactions, contract rights and other entitlements arising from or relating to the payment of monies from [the Debtor's] customers' and/or other payors or obligors." Agreement, p. 1. These advances were made pursuant to two Revenue Purchase Agreements (the "Agreements") – one dated January 8, 2024 under which ACG advanced to the Debtor $20,000 and another dated February 15, 2024 under which ACG advanced an additional $15,000.[2] Only three months after the first advance and two months after the second one, Mr. Diaz and Ms. Albury put the Debtor into bankruptcy. They now complain that ACG should not be able to sue them on their performance guaranties because the suit is interfering with their ability to reorganize the Debtor.

## THE REVENUE PURCHASE AGREEMENTS

The Debtor attempts to characterize the advances made by ACG as usurious loans. They are not but instead are the purchase of revenue streams, with the risk of non-payment resting on ACG.[3]

> Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. ACG is entering this Agreement knowing the risks that Merchant's business may not perform as expected or fail, and ACG assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give ACG a reasonable and fair opportunity to receive the benefit of its bargain. ACG acknowledges that it may never receive the Purchased Amount in the event that the Merchant does not generate sufficient revenue. Merchant and Guarantor(s)(s) [*sic*] are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount.

---

[2] The Agreements are attached as Exhibits A and B to the Complaint.
[3] The Debtor and the guarantors are only liable where, as here, the Debtor breaches the Agreement.

Agreements, p.1.

The Agreements call for a daily payment to be made to ACG, which, in the words of the Agreements, "is a good faith estimate of ACG's share of the future revenue stream." *Id.* If at any point in time the payments exceed the anticipated revenue stream, the Debtor may seek an adjustment so that both past and future payments are reflective of the Debtor's actual revenue. Adjustments to past payments are made in accordance with a reconciliation process set forth in Section 1.3 of the Agreements:

> 1.3 **Reconciliation.** As long as an Event of Default, or breach of this agreement, has not occurred, Merchant may request a retroactive reconciliation of the total Remittance Amount. All requests hereunder must be in writing to funding@acgroupinc.com. Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report outstanding if applicable, from the date of this Agreement through and including the date the request is made. … Such reconciliation, if applicable, ***shall be performed by ACG within two (2) Business Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank Account so that the total amount debited by ACG shall equal the Specific Percentage of the Future Receipts that Merchant collected during the requested month***.

Agreement § 1.3 (emphasis added). Section 1.4 sets forth a process by which the Debtor can obtain adjustments on future payments.

> 1.4 **Adjustments to the Remittance.** As long an Event of Default, or breach of this agreement, has not occurred, Merchant may give notice to ACG to request a decrease in the Remittance, should they experience a decrease in its Future Receipts. All requests hereunder must be in writing to funding@acgroupinc.com and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report outstanding from the date of this Agreement through and including the date the request is made. … ***The Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks***.

Agreement § 1.4 (emphasis added). The total payments do not increase if the remittance amount is adjusted. Indeed, the Agreements make it clear that "there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by ACG." Agreements, p. 1.

The Debtor never requested a reconciliation or adjustment. A default occurred when the Debtor ceased making payments to ACG.

### **EXTRAORDINARY CIRCUMSTANCES DO NOT EXIST**

"'While 11 U.S.C § 105(a) does grant the bankruptcy court broad powers to issue any order 'necessary or appropriate to carry out the provisions of this title,' it is an ***extraordinary*** exercise of discretion to use that power to stay a third party action not involving the debtor." *In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir. 1991) (emphasis added), *quoting, In re Brentano's, Inc.*, 36 B.R. 90, 92 (S.D.N.Y. 1984) (reversing an order staying a lawsuit against a guarantor of a lease). *Accord*, *In re Smart Card Auto, Inc.*, 2003 U.S. Dist. LEXIS 12776, *5 (E.D. La. July 21, 2003) (affirming order of Bankruptcy Court refusing to enjoin lawsuit against co-obligor president of debtor). "It is not enough for the movant to show some limited risk, or that there is a theoretical threat to the reorganization, because it is always the case that a lawsuit against principals of the Debtor could have some effect on the reorganization. Rather, and in keeping with the principle that extending the stay to non-debtors is extraordinary relief, the party seeking extension of the stay must put forth real evidence demonstrating an actual impact upon, or threat to, the reorganization efforts if the stay is not extended." *FPSDA II, LLC v. Larin (In re FPSDA I, LLC)*, 2012 Bankr. LEXIS 5928, *25 (Bankr. E.D.N.Y. December 26, 2012).

To support its request that ACG be enjoined from pursuing the guarantors, the Debtor alleges:

4

> Diaz and Albury have already discussed and corresponded with Debtor's Counsel regarding the New York court paperwork received, and taken time and energy away from the reorganization efforts of the Debtor. This will only continue absent an Order of this Court enjoining the Defendant from proceeding with further judicial and/or collection efforts against Diaz, Albury, or Noho.[4] Without relief, Diaz and Albury may be forced to obtain counsel in New York to defend themselves from the lawsuit.
>
> \*   \*   \*
>
> There is a reasonable likelihood of success in confirming a Chapter 11 Plan of Reorganization given the Debtor's cash flow as outlined in the cash flow projections filed with this Court.

Motion, ¶¶ 19, 21.

There is nothing in the Motion that justifies this Court engaging in an extraordinary exercise of its discretion. The Motion is devoid of any allegation of the time that either of the guarantors are spending on the reorganization or what it is that they even do for the Debtor's business. While the Motion makes the conclusory allegation that there is a reasonable likelihood of success in confirming a plan "as outlined in the cash flow projections filed with this Court," no information is provided as to how those cash flow projections demonstrate that a plan is likely to be confirmed, let alone what ACG will be paid on its secured claim. The Motion simply does not meet the standards for demonstrating that extraordinary relief is warranted.

## CONCLUSION

"Extraordinary" cannot mean that whenever a lawsuit is filed against the principals of a debtor company the Court should enjoin it. Indeed, as discussed above, the courts have held otherwise. But, that is exactly the rule that the Debtor is asking this Court to adopt. The facts

---

[4] The Debtor also seeks the injunction as to Mexcalito Taco Bar Noho, Inc., an entity that the Debtor claims "was not a functioning entity at any time." Motion, ¶ 10. Assuming the truth of that allegation, it is unclear why the Debtor is seeking to enjoin the lawsuit as to that entity. In any event, the Debtor has offered no reason to justify enjoining ACG from pursuing that entity.

advanced by the Debtor to support an injunction do not justify this Court's extraordinary exercise of its discretion. The Motion should be denied.

Respectfully submitted,

AMSTERDAM CAPITAL GROUP, INC.

By its attorneys,

/s/ *Joseph S.U. Bodoff*
Joseph S.U. Bodoff (BBO #549116)
Rubin and Rudman LLP
53 State Street
Boston, MA 02109
617-330-7038
jbodoff@rubinrudman.com

Dated: May 15, 2024

CERTIFICATE OF SERVICE

It is hereby certified that on May 15, 2024 a true and correct copy of the foregoing was served through the ECF System and by email to counsel for the plaintiff.

/s/ *Joseph S.U. Bodoff*
Joseph S.U. Bodoff